UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X

IN THE MATTER OF
STEPHANIE MOSES AND ANDREW
J. NAGY, Individually, and STEPHANIE
MOSES AND ANDREW J. NAGY as
Parents and Natural Guardians for                    **MEMORANDUM OF DECISION**
infant SAMANTHA O. NAGY,                             **AND ORDER**

        Plaintiffs                            05 CV 3808 (DRH) (ARL)

   -against-

BAYPORT BLUEPOINT UNION
FREE SCHOOL DISTRICT.

        Defendant.
------------------------------X

**APPEARANCES:**

**PATRICIA FINN, ATTORNEY P.C.**
Attorneys for Plaintiff
628 Piermont Avenue
Piermont, New York 10962
By:    Patricia A. Finn, Esq.

**COOPER, SAPIR & COHEN, P.C.**
Attorneys for Defendant
560 Broadhollow Rd., Suite 210
Melville, New York 11747
By:    David M Cohen, Esq.

**HURLEY, Senior District Judge:**

      Plaintiffs, Stephanie Moses ("Moses") and Andrew J. Nagy ("Nagy") (collectively "Plaintiffs") commenced this action, individually and as the parents and guardian of Samantha Nagy, alleging violations of their First Amendment right to Freedom of Religion and Fourteenth Amendment right to Equal Protection arising out of Defendant's denial of their application for a

religious exemption to mandatory immunization for their school age daughter. Presently before the Court is the motion of Defendant Bayport Bluepoint Union Free School District (the "District") for summary judgment. For the reasons set forth below, the motion is granted in part and denied in part.

## *BACKGROUND*

The following facts are taken from the parties' submissions and are undisputed unless otherwise noted:[1]

By letter dated February 17, 2004, Plaintiffs wrote to the principal of the Academy Street Elementary School, one of the District's schools. The letter states, in relevant part :

> Our daughter Samantha Jo Nagy will not receive vaccinations because to do so is contrary to our religious beliefs. Please register our daughter for Kindergarten with this letter completing her files, as vaccination is contrary to our family's religious beliefs.
>
> These beliefs are genuine and sincere, which fulfill the legal requirement for the religious exemption provided by New York State law as set forth in N.Y. Pub. Health L. Section 2164(9).

The District responded by letter dated March 2, 2004 advising the Plaintiffs that pursuant to its policy and practice a meeting was scheduled for March 26, 2004 with the District's attorney and Assistant Superintendent to discuss their request for religious exemption. By letter dated March 6, 2004, the Plaintiffs wrote confirming the March 26 meeting. The letter also stated that the Plaintiffs "would like to be helpful in satisfying the districts [sic] requirements for our daughter's exemption. We want you to be assured that we are sincere in our convictions on this

---

[1] Plaintiffs' Rule 56.1 Statement attempts to dispute certain facts that Plaintiffs stipulated to as uncontested in the Joint Pre-Trial Order filed in this action. (Docket No. 22). Given that Plaintiffs have so stipulated, the Court will treat the relevant factual allegations as undisputed.

matter." Continuing, the letter cited case law in support of the claim.

The meeting was held on March 26, 2004. The Plaintiffs were cooperative and answered all questions asked of them. The meeting was not recorded and the parties dispute certain statements allegedly made. It is undisputed, however, that 1) Moses stated that her religious beliefs included having empathy for others, being civilized to others, tolerance of others, being true to yourself; 2) Nagy stated that if he needed medication for one or two weeks he would take it because he would want to get better as soon as possible; 3) Nagy stated that taking Novocain is against his religion but he did not want the pain from the treatment and therefore he took the Novocain and simply asked God for forgiveness: 4) both Plaintiffs said they thought immunizations were harmful, and Nagy said they contained ingredients such as mercury which is dangerous if exposed to the bloodstream; 5) neither Plaintiff stated that they were opposed to immunizations because they are made with aborted fetal tissue; and 6) Moses stated that she was opposed to immunization because of her faith in God and we should not interfere with the evolution of the immunization system. It is also undisputed that the Plaintiffs did not state at the meeting that the body and its machinations are divine in nature and did not quote any biblical passages.

On March 31, 2006, plaintiffs' counsel wrote a letter to the District, which was signed by the plaintiffs. The letter sets forth the Plaintiffs' religious beliefs as follows:

> I believe in God, the Creator of heaven and earth and all therein.
> God is the supreme authority over this creation and is all-powerful.
> We are created in God's image and must not be defiled. As the
> divine Architect, God designed our bodies to have immune
> systems, which must not be defiled by immunizations.
> Immunizations are a violation of God's supreme authority, and
> therefore, unholy. Since immunizations are "unholy" they violate

> my religious beliefs.
>
> I believe that God has created us in His image. In being created in God's image, we are given His immune system. We are bestowed with His gift, the immune system. I believe it is sacrilegious and a violation of my sacred religious beliefs to violate what God has given us by showing a lack of faith in God. Immunizations are a lack of faith in God and His way, the immune system.

(Complaint Ex. 5.) The letter goes on to cite quotations from the Bible as support for these religious beliefs.

At some point in time, Plaintiffs consented to have their dentist and pediatrician send Samantha Jo's medical records to the District. They were received by the District in June 2004.

By letter dated July 14, 2004, the District advised Plaintiffs that based on their correspondence with the District, the information provided at the March 26, 2004 meeting and Samantha Jo's medical records, their request for religious exemption was denied.

In August 2004 Plaintiffs filed a petition with the New York State Commissioner of Education seeking to challenge defendant's denial of the request for exemption. By decision dated April 26, 2005 the Commissioner of Education dismissed the petition, holding that the District's decision denying the request for the religious exemption was not arbitrary or capricious.

Thereafter, this action was commenced. After a hearing, Plaintiff's motion for a preliminary injunction was denied.

During the testimony at the preliminary injunction and/or depositions taken in this matter, Plaintiffs admitted the following facts. Plaintiffs' children are given medication, including antibiotics, even in the absence of a life-threatening condition. At times, Moses takes tylenol for

4

headaches. Nagy would take medication that is in opposition to his religious beliefs out of fear. Nagy has taken antibiotics and his daughter has been given medication because he was scared of not listening to the doctor. Nagy's religious beliefs are that there is a power, a God that will take care of things that will help you in times of need, only if you ask for help; that if you do get sick you have what you need in your body to take care of it; God gave you what you need. Nagy's claimed religious belief in opposition to immunization is that he is against injecting a disease into the body but he does not know how or why this belief is religiously based and does not know how he determined that immunizations contain disease. Moses and Nagy share similar religious beliefs.

Defendants have testified, and Plaintiffs do not dispute, that for approximately five years prior to August 2005, the District had a policy of questioning parents about their religious beliefs when a request for a religious exemption was made. Present at these meetings would be the Assistant Superintendent, the District's attorney, the parents and sometimes' the parents' attorney. During this period of time there were approximately seven requests made; two were granted and five were denied.

### *Discussion*

#### *I. Standard for Summary Judgment*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are

5

material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary

judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.' " *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587.

## II. The Parties' Contentions

The District has moved for summary judgment on all of Plaintiff's claims. It argues that it did not violate Plaintiffs' First Amendment rights in denying the request for a religious exemption because their beliefs are not religious, but rather personal, moral or philosophical, and because they are not genuinely and sincerely held. With regard to the Fourteenth Amendment Equal Protection claim, the District argues that there are no facts to support that the District treated plaintiffs differently from other similarly situated parties. Finally, the District argues that Plaintiffs are estopped from asserting that their denial of the exemption was arbitrary and capricious and that the state law claims are barred for failure to file a notice of claim.

Plaintiffs counter that they have put forth sufficient evidence that they are devout believers in a belief system that is contrary to the practice of requiring vaccinations and the District's decision in denying the exemption was arbitrary and capricious and a violation of their constitutional right to freedom of religion and equal protection.

## III. The First Amendment Claim

"The Free Exercise Clause of the First Amendment is an unflinching pledge to allow our

7

citizenry to explore religious beliefs in accordance with the dictates of their conscience." *Jackson v. Mann,* 196 F.3d 316, 320 (2d Cir. 1999) (internal quotations omitted)(quoting *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)). The Second Circuit has repeatedly emphasized "the limited function of the judiciary in determining whether beliefs are to be accorded first amendment protection." *Patrick v. LeFevre,* 745 F.2d 153, 157 (2d Cir. 1984). In determining whether religious beliefs are entitled to free exercise protection, "the relevant inquiry is not whether, as an objective matter, the belief is 'accurate or logical.' *Jackson*, 196 F.3d at 320 (quoting *Jolly v. Coughlin,* 76 F.3d 468, 476 (2d Cir. 1996)). Rather, it is "whether the beliefs professed by a [claimant] are sincerely held and whether they are, in his own scheme of things religious." *Patrick,* 745 F.2d at 157 (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)). "While it is a delicate task to evaluate religious sincerity without questioning religious verity, our free exercise doctrine is based upon the premise that courts are capable of distinguishing between these two questions." *Jolly,* 76 F.3d at 476.

Section 2164 of the New York Public Health Law provides in pertinent part that "every person in parental relation to a child in this state shall have administered to such child an adequate dose or doses of immunizing agent against poliomyelitis, mumps, measles, diphtheria, rubella and haemophiles influenzae type b," however, the requirement for vaccination "shall not apply to children whose parent, parents or guardian hold genuine and sincere religious beliefs which are contrary to the practices herein required . . . ." N.Y. Pub. Health Law § 2164. The statutory exemption for immunizations is for persons whose opposition thereto stem from genuine and sincere religious beliefs. Like the First Amendment, the exemption in the New York Public Health Law does not extend to persons whose view are founded on other grounds such as

8

"scientific and secular theories," "philosophical and personal belief," *see Mason v. Gen'l Brown Cent. Sch. Dist.,* 851 F.2d 47, 51-52 (2dCir. 1988), or "medical or purely moral considerations," *Sherr v. Northport-East Northport Union Free Sch. Dist.,* 672 F. Supp. 81,92 (E.D.N.Y. 1987).

The Second Circuit employs a "subjective definition of religion, which examines an individual's inward attitudes towards a particular belief system." *Patrick*, 745 F.2d at 157 (citing *Thomas v. Review Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 713-15 (1981)); *see Int'l Soc'y for Krishna Consciousness, Inc. v. Barber,* 650 F.2d 430, 439 (2d Cir. 1981). Under this approach, a "person's claim that his belief is an essential part of a religious faith must be given great weight." *Patrick,* 745 f.2d at 158 (quoting *Seeger*, 380 U.S. at 184). "Impulses prompted by dictates of conscience as well as those engendered by divine commands are therefore safeguarded against secular intervention, so long as the claimant conceives of the beliefs as religious in nature." *Id.* The subjective definition of religion requires the "factfinder to delve into the internal operations of the Claimant's mind, and in turn assess the sincerity of the held beliefs and the place occupied by such beliefs in the claimant's life." *Patrick*, 745 F.2d at 158.

The threshold question of whether the claimant has a sincerely held religious belief "is, of course, a question of fact." *Sherr,* 672 F. Supp at 94 (citing *Seeger*, 380 U.S. at 185). Moreover , the Second Circuit 'has consistently held that where subjective issues regarding a litigant's state of mind, motive, sincerity or conscience are squarely implicated, summary judgment would appear to be inappropriate and a trial indispensable." *Patrick,* 745 F.2d at 159. "The need for a full exposition of facts is profound under such circumstances since determining a man's state of mind is an awesome problem, capable of resolution only by reference to a panoply of subjective factors. . . . Furthermore, a sojourn into an adherent's mind-set will inevitably

9

trigger myriad factual inferences, as to which reasonable persons might differ in their resolution. Traditionally, this function has been entrusted to the jury." *Id*. (internal citations omitted).

Having examined the record and given that Plaintiffs' claim that their beliefs are an essential part of a religious faith must be given great weight, the Court finds that there is sufficient evidence to raise a question of fact as to whether Plaintiffs have a sincerely held religious belief against immunization. Indeed, the District recognizes such in their papers. For example, the District, referring to evidence that the description of Plaintiffs' religious beliefs mirrored that in another case, state: "This is hardly a coincidence, and significantly calls into question plaintiffs' alleged beliefs. . . . Not only are the plaintiffs' alleged beliefs seriously in doubt as a result of the foregoing, their credibility is also undermined by an abundance of other evidence." Defendant's Memorandum of Law at p. 11. It is axiomatic, however, that neither questions as to Plaintiffs' beliefs nor issues as to their credibility are appropriately resolved on a motion for summary judgment. Rather, this Court is required to draw all reasonable inferences in favor of these Plaintiffs.

The District points to the fact that Plaintiffs have given their daughter medication and have taken it themselves as evidence that their views are not religious because they have not "categorically disregarded elementary self-interest . . . in preference to transgressing [the] tenets [of their views]." *Krishna*, 650 F.2d at 440. Given the testimony that they gave their daughter medication of out of fear of being accused of neglect, this evidence does not establish that Plaintiffs would not as a whole disregard their self-interest rather than transgress their beliefs. *Cf. Lewis v. Sobol,* 710 F. Supp. 506, 514 (S.D.N.Y. 1989).

Drawing all reasonable inferences in favor of the Plaintiffs and notwithstanding the

evidence calling into question the credibility of their claim, there is sufficient evidence from which a trier of fact could conclude that Plaintiffs have a sincere religious belief against immunizations. Accordingly, the motion for summary judgment on Plaintiffs' First Amendment claim is denied.

## IV.  Equal Protection Claim

Plaintiffs also alleges a violation of their Equal Protection rights. The Equal Protection Clause of the Fourteenth Amendment guarantees the right to be free from "invidious discrimination in statutory classifications and other governmental activity." *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) (quoting *Harris v. McRae*, 448 U.S. 297, 322 (1980)). "The Equal Protection Clause [thus] requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).

Plaintiffs' Equal Protection challenge must fail. There is not a scintilla of evidence to support a claim that Plaintiffs were treated differently from any other similarly situated applicants. *See id.; cf. Village of Willowbrook v. Olech,* 528 U.S. 562 (2000).

## V.  Plaintiffs' State Law Claims

Although not a model of clarity, the complaint suggests a state cause of action for the arbitrary and capricious denial of the exemption under §3124. Summary judgment is granted in favor of the District on this claim as Plaintiff neither allege nor argue that they fulfilled the requirement of filing a notice of claim pursuant to § 3813 of the New York Education Law, which is a condition precedent to bringing a state cause of action against the District. *See Weathers v. Millbrook Cent. School Dist.,* 428 F. Supp.2d 180 (S.D.N.Y. 2006); *Parochial Bus Sys. Inc. v. Bd of Educ. of City of N.Y.*, 60 N.Y.2d 639 (1983).

*Conclusion*

For the reasons set forth above, Defendant's motion for summary judgment is DENIED on Plaintiffs' First Amendment claim and GRANTED as to Plaintiffs' Equal Protection and state law claims.

**SO ORDERED**

Dated: Central Islip, New York
February 13, 2007

/s/
Denis R. Hurley
Senior District Judge